UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
UNITED STATES OF AMERICA,           )
                                    )
                                    )
                                    )
        v.                          )     Criminal No. 10-10157-DJC
                                    )
JAVAN TOOLEY,                       )
                                    )
        Defendant.                  )
                                    )
_____ )

**MEMORANDUM AND ORDER**

**CASPER, J.**                                              February 11, 2015

## I.  Introduction

Defendant Javan Tooley ("Tooley") has filed a motion to vacate his guilty plea pursuant to 28 U.S.C. § 2255. D. 27. Tooley contends his guilty plea was not knowing, voluntary and intelligent and thus in violation of his due process rights, because he entered the plea while unaware of Annie Dookhan's misconduct at the Hinton Drug Lab. Id. For the reasons stated below, the Court DENIES Tooley's motion to vacate.

## II.  Standard

A petitioner may seek post conviction relief under 28 U.S.C. § 2255 if his "sentence (1) was imposed in violation of the Constitution, or (2) was imposed by a court that lacked jurisdiction, or (3) exceeded the statutory maximum, or (4) was otherwise subject to collateral attack." David v. United States, 134 F.3d 470, 474 (1st Cir. 1998). It is the petitioner's burden to make out a claim for § 2255 relief. Id.

## III.  Factual and Procedural History

Tooley pled guilty on May 28, 2010 to a one-count Information, charging him with distribution of cocaine, in violation 21 U.S.C. § 841(a)(1). D. 12, 5/18/10 dkt. entry. The charge arose out of an undercover officer's purchase of two baggies of crack cocaine from Tooley and his co-defendant, Sean Jones, on January 21, 2010. D. 40-2 at 2. The police arrested both men after consummation of the transaction and, later at the police station, it was discovered that Tooley was secreting a bag containing thirty baggies of crack cocaine in his buttocks. D. 40-2 at 6. At the plea hearing, Tooley was represented by counsel and waived his right to an indictment. 5/18/10 dkt. Entry; D. 15; D. 40 (transcription of 5/18/10 plea hearing) at 11-12. As part of its recitation of the factual basis for the plea, the government noted that the suspected crack cocaine had field tested positive for cocaine, but that the government was still awaiting the final lab certification. Id. at 11-12. That certification was later provided, after Tooley's guilty plea, by Annie Dookhan ("Dookhan"). D. 27-2. On November 11, 2010, the court sentenced Tooley to sixty months of incarceration followed by five years of supervised release. D. 23. Upon learning of Dookhan's misconduct at the Hinton Lab, Tooley filed the instant petition. D. 27. At Tooley's request, with the assent of the government, the Court stayed the matter pending the publication of a report concerning the Hinton Lab. D. 26; D. 46. Following receipt of the report and receipt of initial and supplemental filings, D. 27-29; D. 37-42; D. 49; D. 55; D. 58-60; D. 63; D. 65-66, and a non-evidentiary hearing, D. 62, the Court took the matter under advisement.

## IV. Discussion

### A. Applicable Standard under *Ferrara*

To establish that a guilty plea was involuntary, a petitioner must show: (1) "that some egregiously impermissible conduct (say, threats, blatant misrepresentations, or untoward blandishments by government agents) antedated the entry of his plea," and (2) "that the

2

misconduct influenced his decision to plead guilty or, put another way, that it was material to that choice." Ferrara v. United States, 456 F.3d 278, 290 (1st Cir. 2006). For the purposes of the second prong regarding materiality, a petitioner must show a "reasonable probability," i.e., "a probability sufficient to undermine confidence in a belief that the petitioner would have entered a plea." Id. In making such determination, however, the Court "must take an objective approach" and consider "whether a reasonable defendant standing in the petitioner's shoes would likely have altered his decision to plead guilty" if he had known the sequestered evidence. Id. Although not exhaustive, relevant factors for making such determination include: "(i) whether the sequestered evidence would have detracted from the factual basis used to support the plea; (ii) whether the sequestered evidence could have been used to impeach a witness whose credibility may have been outcome-determinative; (iii) whether the sequestered evidence was cumulative of other evidence already in the defendant's possession; (iv) whether the sequestered evidence would have influenced counsel's recommendation as to the desirability of accepting a particular plea bargain; and (v) whether the value of the sequestered evidence was outweighed by the benefits of entering into the plea agreement." Id. (internal citations omitted).

In Ferrara, the First Circuit concluded that the government's failure to notify the petitioner of the recantation of a key witness, testimony upon which the jury's verdict "may well have hinged," constituted "impermissible prosecutorial misconduct." Id. at 293. The court determined such impermissible conduct was material to the petitioner's decision to plead guilty because had the evidence of the recantation come to light, the judge likely would not have accepted the petitioner's plea; the recantation would have provided a new and extremely powerful basis for impeaching a key witness and the jury's evaluation of same; the evidence would likely would have affected the plea negotiations because the sequestered evidence was

3

"powerful impeachment evidence" against a key witness; and the petitioner's attorney would have advised his client that the government's allegations were "highly defensible." Id. at 296.

### B. Tooley's Petition

#### 1. Egregiously Impermissible Conduct

The government agrees with Tooley that the scandal surrounding Dookhan's conduct at the Hinton Drug Lab, where the drugs seized at Tooley's arrest were originally tested and certified by Dookhan, "remains profoundly disturbing." D. 37 at 1. Dookhan mishandled evidence and produced false drug reports over a period of years, pleading guilty in November of 2013 to various criminal charges concerning her misconduct. Id. & n. 1. The First Circuit has not yet opined conclusively that Dookhan's actions constituted egregiously impermissible conduct. Wilkins v. United States, 754 F.3d 24, 28 (1st Cir. 2014); cf. United States v. Smith, No. 09-10006-RGS, 2013 WL 6798931, at *3 (D. Mass. Dec. 20, 2013) (declining to find Dookhan's production of drug certifications egregiously impermissible when a petitioner did not claim innocence because "nothing implicates the crux of the first prong of the Ferrara exception—coercive misconduct that compromises a defendant's claim of *factual innocence*") (emphasis in original). This Court, as in Wilkins, 754 F.3d at 28, need not decide whether such conduct is egregiously impermissible, since, as discussed below, it has concluded that Tooley cannot satisfy the second prong of the Ferrara test regarding materiality.[1]

#### 2. Materiality

---

[1] That being said, there is no evidence that Dookhan did anything improper with the drugs in this particular case. Tooley has not proffered any direct evidence of same and neither the government's production of testing documents nor the state's review have revealed anything in this regard. Although it is not disputed that Dookhan tested samples from a few of the 32 baggies, there is no suggestion that she even opened 27 of the baggies seized in this case. D. 58 at 2 n. 1; see Wilkins, 754 F.3d at 29 (noting that "Dookhan had tested only random samples of the drugs seized leaving some thirty one virgin bags untouched and untested"); id. at n. 2 (concluding that "there is no evidence that Dookhan might have expected that anyone else would ever test those [untested] bags. It follows that there is no reason to suspect that she took the time and trouble to open, contaminate, and close each one"). Moreover, subsequent retesting of samples of the unopened 27 bags tested positive for cocaine. D. 37 at 9-10; D. 49.

4

In this case, any allegations about misconduct about Dookhan do little to undermine the circumstantial evidence of Tooley's guilt or the integrity of his guilty plea. The Court has considered the relevant factors regarding materiality identified in Ferrara and the balance of them do not weigh in Tooley's favor. First, the Court cannot conclude that the discovery that Dookhan had examined some portion of the drugs in this case significantly undermines the factual basis for Tooley's plea. It is not a fair characterization, as Tooley suggests, that the evidence against him as "quite limited." D. 55 at 24. The facts and circumstances of the drug buy in this case are similar to those in Wilkins.

In Wilkins, the First Circuit concluded that the petitioner had failed to show the materiality of the Dookhan misconduct where there was (1) "powerful circumstantial evidence" surrounding the sale of drugs to an undercover police officer; (2) the pattern of a typical street corner drug buy, with a positive field test and the presence of a stockpile of similar bags upon arrest; (3) the district court's factual finding that re-tested baggies were "untouched" by Dookhan; (4) the rejection that a jury would "make [the petitioner's] trial a referendum on Dookhan rather than a proceeding aimed at determining [the petitioner's] guilt or innocence;" and (5) no claim of factual innocence. Wilkins, 754 F.3d at 29-31; see United States v. Smith, No. 09-10006-RGS, 2013 WL 6798931, at *3 (D. Mass. Dec. 20, 2013) (dismissing habeas petition where Dookhan was chemist, drugs were retested and there was substantial circumstantial evidence regarding the drugs).

The facts and circumstances here are similar to those in Wilkins. Tooley's co-defendant, Jones, asked an undercover officer if he "was looking" (i.e., seeking to buy drugs) and when the officer responded affirmatively that he wanted "2 for 40" (i.e., two $20 bags of crack cocaine for $40), Jones told him that "I got you" and led him to Tooley. D. 40-2 at 4. The three men walked

together, then Tooley stopped, took two wrapped pieces of crack cocaine out of a plastic bag and handed them to Jones who passed them to the undercover officer. Id. The officer then handed $40 to Tooley to complete the deal. Id. Such facts reflect a typical street buy and the field test of the crack cocaine was positive. D. 58 at 6; D. 40-2 at 6. Tooley had also previously been arrested in the downtown Boston area on crack cocaine charges on two prior occasions, including one prior occasion when he was also found to be holding a bag of baggies of suspected crack cocaine in his buttocks. D. 59 at 1; see United States v. Wilkins, 943 F. Supp. 2d 248, 258 n. 11 (D. Mass. 2013) (reasoning that the "speculation that defendants might have been engaged in the sham street sale of counterfeit drugs is barely within the rim of the remotely possible" and that "[w]hile episodic sales of counterfeit drugs are not unknown, at a street level, where sales are repetitive and customers are demanding about the quality of what they purchase, any sale of a sham drug is extremely dangerous to an established dealer"); see also United States v. Merritt, 755 F.3d 6, 10-11 (1st Cir. 2014) (noting that "[t]here is not a sliver of evidence that anyone connected with this transaction ever contemplated a sham sale, and the fact that [the] stockpile (from which the bag sold by the appellant was taken) consistently tested positive for cocaine argues persuasively that only genuine drugs were being trafficked that day").

The post-arrest facts here are even more inculpatory. Tooley made a call at booking and stated "[t]hey said I sold to an undercover officer but they can't make it stick without the buy money." D 40-3 at 5. When officers noticed something amiss and attempted to perform a strip search, Tooley clenched his buttocks and refused to cooperate. Id. at 4-5. After a few hours in the booking area pending a search warrant, Tooley asked an officer "[i]f I do you a favor can you do me a favor?" and when the officer asked what he meant, Tooley replied, "I'll give you what I have up my ass if you get me my wife's number from my cell phone." Id. at 5; D. 40 at 11. A

plastic bag containing thirty smaller plastic baggies of crack cocaine was subsequently recovered from his buttocks. Id. The police field tested the drugs (one of the two baggies purchased by the undercover officer and one of the thirty bags recovered from Tooley's person) and both tested positive for cocaine base. D. 58 at 6; D. 40-3 at 6. There was ample circumstantial evidence that Tooley engaged in the sale of crack cocaine.

Similarly, the Court cannot conclude that the fact that Dookhan tested some of the drugs would have been outcome-determinative at trial. The government explains that the bags have been retested and confirmed for cocaine, and that only a few of the bags appeared to have been opened from original testing. D. 37 at 9-10. Relying upon an affidavit from a laboratory practices and chain-of-custody expert, Tooley argues that it would be impossible for any chemist to confirm that the other bags were untouched. D. 55-3 ¶¶ 8, 11, 14-16. At a minimum, Tooley argues that any chemist witness who conducted the retesting would be subject to vigorous cross examination given the potential that Dookhan lined the bags up with samples from other cases on her desk, potentially contaminating the sample. D. 55 at 20.

However, even assuming *arguendo* that the lab testing evidence was excluded or seriously undermined at trial, the Court cannot conclude that such impact on the government's case-in-chief would be outcome-determinative. The government's case still has strong circumstantial evidence against Tooley including the nature and circumstances of the transaction and Tooley's post-arrest conduct, including the discovery of thirty baggies containing what appeared to be crack cocaine secreted on his person. That is, the government could introduce all of the circumstances of the drug deal—i.e., that the undercover agent sought to buy crack cocaine; negotiated a price consistent with the rate for crack cocaine; that the undercover agent made the exchange of money for a white substance in two baggies consistent with the

appearance of crack cocaine with Tooley and Jones; that, post-arrest, Tooley was discovered to have thirty baggies of a similar substance and also consistent with the appearance of crack cocaine secreted on his person and that sample of the substance bought by the undercover officer and a sample of the substance secreted on Tooley both field tested positive as crack cocaine.

Unlike the scenario in Ferrara where "the jury's verdict may well have hinged on [the] evaluation [of the witness who recanted]," the evidence of Dookhan's drug testing did not have the same outcome-determinative value in the government's evidence against Tooley in this case. See, e.g., United States v. Smith, No. 07-10143-NMG, 2014 WL 7179472, at *5 (D. Mass. Dec. 15, 2014) (denying a motion to vacate a guilty plea where Dookhan was the certifying chemist based upon "overwhelming circumstantial evidence" of telephone records and visual observations made by investigating officers of a high volume drug operation, a controlled purchase of crack cocaine, the defendant's physical presence at the property where a search yielded drugs and other paraphernalia, a positive field test for cocaine and a statement made by another person present in the defendant's residence detailing the defendant's extensive drug activity); United States v. Jackson, No. 10-10409-PBS, 2014 WL 5361531, at *5 (D. Mass. October 22, 2014) (denying a motion to vacate a guilty plea where Dookhan was the chemist because the evidence of guilt was "overwhelming" based on a visual identifications by police officers, a positive field test, that the defendant used a common street term for cocaine and that he gave an undercover police officer his name and telephone number during the first buy and was then found on the same street corner one month later "suggest[ing] that [the defendant] had no fear his customers would be disappointed with their purchases").

Although the drug certification by Dookhan was not cumulative of other evidence in the defendant's possession at the time of his guilty plea, this factor does not weigh heavily in his

favor. Significantly, Tooley plead guilty before the government had even received the drug certifications from the Hinton Lab. At the time of his plea, the defendant was aware of the government's evidence as to the facts and circumstances of the drug buy, the positive field test of these drugs and the additional quantity of drugs, wrapped in thirty, distribution-ready, baggies. It is hard to fathom how Tooley can contend that he would have made a different decision about pleading guilty if he had the information about Dookhan's misconduct when he did not even have or require the drug certification before deciding to enter a guilty plea.

The same sequence of events is germaine to whether the sequestered evidence would have influenced counsel's recommendation as to the desirability of accepting a particular plea bargain. Tooley's supplemental brief contends that "had Tooley known about Dookhan's misconduct, he and his counsel *might* have been prompted to seek a better plea bargain." D. 55 at 26 (emphasis added). But Tooley received a significant benefit already in exchange for pleading guilty, an agreement from the government not to file the 851 Information that would have increased the advisory guideline sentencing range. D. 65 at 4. Moreover, the Court does not agree that this is the type of evidence contemplated by the plea negotiation discussion in Ferrara, when the case against the petitioner rested on the testimony of a key, recanting witness. The government could have relied upon the circumstantial evidence in support of its negotiations regarding the plea agreement with Tooley. "[T]he prejudice prong of the involuntariness inquiry requires the defendant to show a reasonable probability that he would have proceeded to trial as opposed to a reasonable probability that he would have received a more favorable plea bargain," and while "evidence that defense counsel would not have recommended acceptance of the proffered plea agreement tends to support that conclusion (regardless of the lawyer's advice as to

9

how to proceed thereafter)," Ferrara, 456 F.3d at 296, the Court cannot conclude based on the facts here that the plea offered would have been rejected.

As to whether the value of the sequestered evidence was outweighed by the benefits of entering into the plea agreement, for the reasons above, the Court does not accept Tooley's argument that his "calculation of the risk of pleading guilty would have changed dramatically." D. 65 at 4. Although Tooley argues he would "be faced with the very real possibility that the government would not be able to prove an essential element of its case beyond a reasonable doubt, and correspondingly, [Tooley] would see his chances of acquittal as much improved," D. 55 at 24-25, the proper inquiry is from an objective standpoint—i.e., whether "a reasonable defendant standing in the petitioner's shoes would likely have altered his decision to plead guilty had the prosecution made a clean breast of the evidence in its possession." Ferrara at 294. Although Tooley avers in an affidavit that had he been aware of Dookhan's conduct, "I would have decided to go to trial, rather than plead guilty," D. 60-1, the Court cannot agree that a reasonable defendant in Tooley's shoes would proceed to trial based on the facts in this case. Tooley received concessions as a result of pleading guilty and accepting responsibility and at no point did he claim factual innocence, as he pled guilty even before the drug certificates were available.

Moreover, the value of the sequestered evidence was outweighed by the benefit of Tooley entering a plea agreement. Although he was facing an advisory guideline range of 151 to 188 months, the Court sentenced him to sixty months, a sentence 60% below the advisory guideline range. D. 40-1 at ¶ 115; D. 65 at 4. To the extent that Tooley argues that his sentencing guideline range would have been lower because one of his prior convictions supporting the career-offender status (and what would have supported the filing of a 851 Information if the

government had filed same) was recently vacated because of Dookhan-related misconduct, D. 65 at 4-6, that does not merit a different outcome as to the voluntariness of Tooley's guilty plea. Although the First Circuit ruled today that a claim for resentencing based upon a vacated state sentence scored under the federal sentencing guidelines is cognizable under § 2255, Cuevas v. United States, __ F.3d __, No. 14-1296, at 1 (1st Cir. February 11, 2015), it is only cognizable under the "otherwise subject to collateral attack" prong of § 2255(a) which requires, in relevant part, the showing of a defect that will result in a "complete miscarriage of justice." Id. at 9-10 (quoting David, 134 F.3d at 474). Relief for such claim, therefore, is warranted only if "the vacatur of the underlying state conviction[ ] demonstrates exceptional circumstances" as required by this prong of the habeas statute. Id. at 19. Here, where Tooley challenges the voluntariness of his plea, the Court does not conclude that this consideration supports the relief he seeks where although the advisory guideline sentencing range at trial was based upon his career offender status, he did not receive a career offender sentence, but instead received a sentence 60% below the low-end of that range. For all these reasons, the Court cannot conclude that this factor weighs in favor of Tooley as to the materiality prong.

Finally and significantly, for 2255 purposes, Tooley admitted his "factual guilt" in open court. D. 58 at 7; D. 35 at 9. Wilkins, 754 F.3d at 30. In fact, so did his co-defendant, Jones, in a separate proceeding in which he admitted that they were both involved in crack cocaine transaction. D. 58 at 7 n. 4; 58-1 at 17. In connection with his sentencing, Tooley also admitted that he was a seller and user of crack cocaine. D. 40-1 at ¶¶ 95-97 (presentence report); D. 41-4 (transcript of sentencing) at 23, 26. Such "admission is entitled to significant (albeit not dispositive) weight when, as now, he seeks to vacate that plea through a collateral attack" and

"such an admission is especially compelling because the petitioner neither attempts to explain it away nor makes any assertion of factual innocence." Wilkins, 754 F.3d at 30.

C.     **Whether an Evidentiary Hearing is Warranted**

An evidentiary hearing is appropriate "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255. "Even if a[n evidentiary] hearing is requested, a district court properly may forgo it when (1) the motion is inadequate on its face, or (2) the movant's allegations, even if true, do not entitle him to relief, or (3) the movant's allegations "need not be accepted as true because they state conclusions instead of facts, contradict the record, or are 'inherently incredible.'" David, 134 F.3d at 477 (quotation omitted). Here, Tooley's allegations, even if true, do not entitle him to relief.

Tooley seeks an evidentiary hearing to present an expert on laboratory practices, chain-of custody issues and the limitations of retesting. D. 55-3; 65 at 5. Additionally, Tooley wishes to provide testimony from his trial counsel, and potentially also take the stand himself, to explain how knowledge of Dookhan's misconduct would have influenced his decision to go to trial. Id. The Court first notes that Tooley has provided, and the Court has considered, an affidavit that he would not have taken the plea had he known of the misconduct. D. 60-1 at 2. As discussed above, however, even accepting Tooley's assertions as true, it still does not resolve the issue of materiality from an objective standard. Thus, this is not the scenario contemplated, for example, in Owens. See Owens v. United States, 483 F.3d 48, 61 (1st Cir. 2007) (reversing denial of evidentiary hearing in part because "[a] final determination of the merits of Owens' claim would be best served by greater development of the facts, many of which the Government disputes"). Instead, the inquiry is whether "a reasonable defendant standing in the petitioner's shoes would likely have altered his decision to plead guilty." Ferrara, 456 F.3d at 294.

As to Tooley's proffered expert testimony, the Court concludes that Tooley still cannot meet his materiality burden under an objective standard. Although the First Circuit in Wilkins relied in part on the district court's findings that additional drugs were "untouched" in its upholding of the denial of the habeas petition, the court also held the finding was "not clearly erroneous—indeed, the record [absent an evidentiary hearing] does not permit any contrary inference." Wilkins, 754 F.3d at 29. Tooley seizes on the statement "the petitioner has not explained how Dookhan could have contaminated the virgin bags without touching them," id., and argues that his expert can explain how the bags may have been contaminated. D. 55 at 9-10. However, as in Wilkins, there was no need for an evidentiary hearing, 754 F.3d at 29, where, as here, "there is no evidence that Dookhan might have expected that anyone else would ever test those bags. It follows that there is no reason to suspect that she took the time and trouble to open, contaminate, and close each one." Wilkins, 754 F.3d at 29 n. 2.

Moreover, as discussed above, there remains "powerful circumstantial evidence" surrounding the sale of drugs to an undercover police officer, the nature and circumstances of the undercover drug transaction and Tooley's conduct thereafter and the absence of any claim of factual innocence that does not suggest that a reasonable person in the petitioner's shoes would have proceeded to trial. For all of these reasons, an evidentiary hearing is not warranted.

## V.     Certificate of Appealability

Tooley may receive a certificate of appealability only if he "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A certificate of appealability is appropriate when "reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong." Miller–El v. Cockrell, 537 U.S. 322, 338 (2003) (internal quotations omitted).

Tooley alleges that his plea was involuntary in violation of his due process rights. D. 27 at 1. As discussed above, this Court concludes that Tooley's plea was not involuntary because he has failed to satisfy the materiality prong of the Ferrara analysis, specifically that Dookhan's misconduct "influenced his decision to plead guilty, or, put another way, that it was material to that choice." Ferrara, 456 F.3d at 290. Based upon its analysis of the record and the applicable law, the Court does not, at this juncture, conclude that reasonable jurists would find this conclusion debatable or wrong. The Court, therefore, is not inclined to issue a certificate of appealability, but will give petitioner until February 24, 2015 to file a memorandum, not to exceed five pages, if he seeks to address the issue of whether a certificate of appealability is warranted as to his habeas petition regarding the voluntariness of his guilty plea.

## VI. Conclusion

For all of the aforementioned reasons, Tooley's Motion to Vacate under 28 U.S.C. § 2255, D. 27, is DENIED.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge